IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| | * |
| MARCUS DEAN TAYLOR, | |
| | * |
| Plaintiff, | |
| | * |
| v. | Civil Action No. PX 16-115 |
| | * |
| ISIAH LEGGETT et al., | |
| | * |
| Defendant. | |

\* \* \* \* \* \*

**MEMORANDUM OPINION**

Pending in this disability discrimination case is Plaintiff Marcus Taylor's motions for leave to file an amended complaint (ECF Nos. 15, 18, 19) and the Defendants' motion to dismiss (ECF No. 20). The issues have been fully briefed and the Court now rules pursuant to Rule 105.6 because no hearing is necessary. For the reasons that follow, Plaintiff's first motion to amend is granted and Defendants' motion to dismiss is granted in part and denied in part.

I.       **BACKGROUND**[1]

On January 11, 2013, Plaintiff Marcus Taylor was arrested by Montgomery County police officers after they found him sitting in his car outside a property that Taylor alleges he had an interest in buying. Amended Complaint, ECF No. 15 at 4. Taylor is deaf and has limited speaking and writing abilities. Following his arrest, Taylor was transported to a Montgomery County police station where he was interrogated for five or six hours. During the interrogation, his dominant hand was handcuffed to the table, rendering him unable to communicate with the officers in writing. Taylor's repeated requests to be provided an American Sign Language ("ASL") interpreter were also denied. *Id.* at 4–5. A police department employee who understood

---

[1] Unless otherwise noted, the facts here are construed in the light most favorable to the Plaintiff, the nonmoving party.

sign language eventually joined Taylor, but the employee's signing capabilities were limited and so the employee could not translate adequately for Taylor.  Taylor also requested in writing to be provided a lawyer. This request was also denied. *Id.* at 5.

After questioning, Taylor was transferred from the police station to the Central Processing Unit of the Montgomery County Department of Corrections where his initial appearance was conducted without an interpreter. From the time of his arrest through his time at the Central Processing Unit, Taylor contends that no one explained to him the reason for his arrest. He was eventually taken to the Montgomery County Correctional Facility where he remained detained for forty-two days. *Id.* at 5.

The Montgomery County Correctional Facility's records indicate Taylor was provided with a nurse who knew sign language during his detention. Taylor alleges that the nurse was neither fluent nor certified as an American Sign Language (ASL) interpreter and so he was unable to effectively communicate with the facility's staff. For example, before Taylor was allowed to come in contact with other inmates at the Montgomery County Correctional Facility, he was required to submit to a tuberculosis test and chest x-ray. Plaintiff contends that after the x-ray, the nurse informed him that the x-ray was "abnormal" and noted that he could have cancer. But when he asked for additional information regarding this possible cancer diagnosis, he was not provided with a qualified interpreter. He also alleges that he missed a hearing date because of a breakdown in communication.  Although Plaintiff was placed in a holding cell with other inmates to be transported to court, he was ultimately left behind ostensibly because he could not hear the guards calling his name. On February 22, 2013 Taylor was released from detention and the criminal charges against him were dismissed.

Taylor filed his original complaint in this Court on January 11, 2016, against County Executive Isiah Leggett, Deputy Warden Gale Starkey of the Montgomery County Correctional Facility, and Montgomery County Chief of Police Thomas Manger, alleging violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and § 504 of the Rehabilitation Act, 29 U.S.C. § 794, as well as negligence and various constitutional claims. ECF No. 1. Defendants filed a motion to dismiss the original complaint on February 26, 2016. ECF No. 6. On July 6, Taylor moved for leave to file an amended complaint for the purpose of adding three additional parties: Montgomery County, Maryland; the Montgomery County Correctional Facility; and the Montgomery County Police Department. ECF No. 15. While the motion included a clean version of the amended complaint, Taylor failed to attach a redlined version of the new complaint as is required under this Court's local rules. *See* Md. Local Rule 103.6(c). Taylor eventually filed a second motion for leave to file an amended complaint attaching a redlined version at Defendants' request. ECF No. 19.

On August 15, 2016, Defendants filed another motion to dismiss and agreed to leave Taylor's motion to amend unopposed "in an effort to move this case forward." ECF No. 20 at 2 n.1. Accordingly, the Court will grant Taylor's motion to amend and accept the amended pleading at ECF No. 15 as the operative complaint.  Defendants' original motion to dismiss, ECF No. 6, is denied as moot as are Taylor's two subsequent motions for leave to file an amended complaint. ECF Nos. 18 and 19. For the reasons that follow, Defendants' motion to dismiss, ECF No. 20, is granted in part and denied in part.

## II.     STANDARD OF REVIEW

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived

therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474

(4th Cir. 1997). "The mere recital of elements of a cause of action, supported only by conclusory

statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v.*

*McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009)). To survive a motion to dismiss, a complaint's factual allegations "must be enough to

raise a right to relief above the speculative level on the assumption that all the allegations in the

complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (internal citations omitted). In this regard, "[a] plaintiff need not 'forecast' evidence

sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts

to establish those elements." *Walters*, 684 F.3d at 439 (citation omitted). "Thus, while a plaintiff

does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint

must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting

*Twombly*, 550 U.S. at 570).

## III.   ANALYSIS

### A.   Claims Against the Montgomery County Police Department

Defendants argue that all of the claims against the Montgomery County Correctional

Facility and the Montgomery County Police Department must be dismissed because they are not

entities capable of being sued. Federal Rule of Civil Procedure 17(b)(3) establishes that the

capacity for an entity to sue or be sued is established by the law of the state where the Court is

located. "Under Maryland law, it is well-established that county police departments are agents of

the county and not treated as separate legal entities." *LaPier v. Prince George's Cnty., Md.*, No.

10–CV–2851 AW, 2011 WL 4501372, at *3 (D. Md. Sept. 27, 2011) (citing cases); *see also*

*Hines v. French*, 157 Md. App. 536, 573 (2004). Similarly, the County's prisons are agencies

4

owned and operated by Montgomery County through the Montgomery County Department of

Correction and Rehabilitation under Article 25A of the Annotated Code of Maryland and § 2–28

of the Montgomery County Code (1994 as amended), and no provisions in any statute or

regulation empowers Montgomery County Correctional Facility to sue or be sued in its own

capacity. *See Mbewe v. Unknown Names of Mailroom Mailroom Clerks*, No. AW-12-CV-3344,

2013 WL 6255382, at *3 (D. Md. Dec. 3, 2013). *Cf. Abunaw v. Prince George's Corr. Dep't*,

No. DKC 13-2746, 2014 WL 3697967, at *2 (D. Md. July 23, 2014); *Rhodes v. Montgomery

Cty. Dep't of Corr. & Rehab.*, No. 12-CV-03172-AW, 2013 WL 791208, at *6 (D. Md. Mar. 1,

2013). Accordingly, and because Montgomery County is named as a separate defendant in this

case, the Court will dismiss Taylor's claims against the Police Department and the Montgomery

County Correctional Facility with prejudice.

**B.      Rehabilitation Act and ADA Claims (Counts One and Two)**

**i.      Claims Against Individuals**

Defendants next argue that Taylor cannot maintain an action under the ADA or the

Rehabilitation Act against the individually named defendants—Isiah Leggett, Gale Starkey, and

Thomas Manger—in their personal capacities.  Defendants are correct. Title II of the ADA

provides that "no qualified individual with a disability shall, by reason of such disability, be

excluded from participation in or be denied the benefits of the services . . . of a public entity, or

be subjected to discrimination by such entity." 42 U.S.C. § 12132. The term "public entity," as

defined by the statute, does not include individual persons. *See* 42 U.S.C. § 12131(1). As with

Title II of the ADA, Section 504 of the Rehabilitation Act also "does not permit actions against

persons in their individual capacities." *Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999) (citing

*Hiler v. Brown*, 177 F.3d 542, 545–46 (6th Cir. 1999)). This conclusion is consistent with the

"general principle" that, given the substantial similarities in their language, the two statutes "should be construed to impose the same requirements when possible." *Baird*, 192 F.3d at 468–69. By contrast, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," and "[a]s such, it is no different from a suit against the State itself." *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989) (citations omitted).

Taylor's amended complaint is silent as to whether Defendants Leggett, Starkey, and Manger are being sued in their personal or official capacities.  Taylor could pursue his ADA or the Rehabilitation Act claims against the named Defendants in their official capacities. But because Taylor has stated causes of action under the ADA and Rehabilitation Act against Montgomery County as more fully addressed below, it would be redundant and superfluous to pursue these same claims against individual defendants who, in their official capacities, simply stand in the shoes of the already-sued County defendant. *See Innes v. Bd. of Regents of Univ. Sys. of Maryland*, 29 F. Supp. 3d 566, 575 (D. Md. 2014) (dismissing plaintiff's ADA and Rehabilitation Act claims against defendant sued in his official capacity where plaintiff also filed claims against the university itself) (citing cases). The ADA and Rehabilitation Act claims against Defendants Leggett, Starkey, and Manger are therefore dismissed.

### ii.     Statute of Limitations

Defendants also argue that Taylor's ADA and Rehabilitation Act claims should be dismissed because they are barred by the applicable statute of limitations. ECF No. 20 at 10–12. The ADA and Rehabilitation Act do not specify a limitation period. Federal courts instead "borrow" from the most appropriate or analogous state statute of limitations and apply it to the federal cause of action. *See A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 347 (4th Cir.

2011). Defendants argue that the most applicable Maryland statue here is found in Title 20 of the State Government Article of the Maryland Code. Subtitle 3 of Title 20 provides that "[a]n owner or operator of a place of public accommodation or an agent or employee of the owner or operator may not refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, or privileges of the place of public accommodation because of the person's race, sex, age, color, creed, national origin, marital status, sexual orientation, gender identity, or disability." Md. Code. Ann., State Gov't § 20-304. Subtitle 9 of the same Title prohibits similar acts of discrimination by a unit, officer, or employee of the State, a county, or a municipal corporation. Md. Code Ann., State Gov't § 20-901.  Subtitle 10 provides a two-year limitations period for employment discrimination actions brought under this Title. Md. Code. Ann., State Gov't § 20-1013.  Finally, Md. Code Ann., State Gov't § 20-1202, provides a two-year statute of limitations for disability claims brought under the local discrimination laws of Howard, Montgomery, or Prince George's Counties.

If a statutory two-year limitations period applies to Taylor's ADA and Rehabilitation Act claims, his claims are indeed time barred. Taylor was detained on January 11, 2013, and released on February 22, 2013, and it is undisputed that Defendants' allegedly discriminatory conduct occurred while Taylor was detained. Taylor did not file his complaint until January 11, 2016, and he waited until July 6, 2016, to file his amended complaint. Because Title 20 is the state statute most analogous to the ADA and the Rehabilitation Act, so says the Defendant, a two year statute of limitations applies.

In so arguing, Defendants heavily rely on the Fourth Circuit Court of Appeals' decision in *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011). There, the Court considered the applicable limitations period for ADA claims brought in Virginia. *See* 655 F.3d at

347–48. The Court held that the Virginia Rights of Persons with Disabilities Act statutory one-year limitations period applied to plaintiff's federal claims because the state law had explicitly pronounced that it "shall be consistent, whenever applicable," with the ADA. *Id.* at 348 (quoting Va. Code. Ann. § 51.5–40). *See also Wolsky v. Medical College of Hampton Roads*, 1 F.3d 222, 225 (4th Cir. 1993) (limitations period in the Virginia Rights of Persons with Disabilities Act also applies to Rehabilitation Act).

With regard to the relevant limitations period applying in Maryland, *Society Without a Name* is inapposite. The Fourth Circuit made this clear in *Semenova v. Maryland Transit Administration*, 845 F.3d 564 (4th Cir. 2017).  In *Semenova*, the plaintiff filed an action in Maryland district court alleging disability discrimination pursuant to the ADA. The district court applied the two-year statute of limitations from Maryland's Title 20—as the Defendants urge this Court to do here—and dismissed the plaintiff's claim as untimely. *Id.* at 564. The Fourth Circuit Court of Appeals reversed, holding that that the closest state-law analog was not the limitations period identified in Title 20, but rather "Maryland's more general statute of limitations, requiring plaintiffs to file civil actions "within three years from the date it accrues unless another provision of the Code provides" otherwise. *Id.* at 567–68 (quoting Md. Code Ann., Cts. & Jud. Proc. § 5-101).

 In so holding, the *Semenova* Court explained that because the Virginia statute in *Society Without a Name* expressly provided that it "shall be consistent, whenever applicable" with the ADA and Rehabilitation Act, the Virginia law reaches the identical claims as the federal disability discrimination statutes. *Id.*  By contrast, Maryland's discrimination statutes are more targeted and discrete in application, and "only recognize[] causes of action in limited circumstances." *Id.* at 567–68. *See, e.g.*, Md. Code Ann., State Gov't § 20–1035 (creating cause

8

of action for disability housing discrimination); Md. Code Ann., State Gov't § 20-1013

(disability employment discrimination)).

As in *Semenova*, Defendants here point to limitations provisions for statutes that are

inapplicable Plaintiff's discrimination claims.  The two-year limitations provision in section 20-

1013, for example, relates only to employment discrimination claims not at issue here.

Similarly, the two-year limitations provision applicable to local anti-discrimination laws of

Montgomery County, *see* Montgomery Cty. Code, §§ 27-10, -11, do not apply because the

Fourth Circuit has made clear that this Court must follow the limitations provisions of the closest

analog in *state* law, not local law.  *Seminova,* 845 F.3d at 568 (rejecting application of this

identical limitations period, reasoning that "the court is not tasked with finding the closest *local*

analog to federal law, but the closest *state* analog." (emphasis in original)).

Because the two-year statutory limitations provision does not apply, Taylor's ADA and

Rehabilitation Act claims are subject to Maryland's three-year statute of limitations governing

general civil actions. *See, e.g.*, *Innes v. Bd. of Regents of Univ. Sys. of Md.*, 29 F. Supp. 3d 566,

572 (D. Md. 2014); *Schalk v. Associated Anesthesiology Practice*, 316 F. Supp. 2d 244, 251 (D.

Md. 2004) (holding that "the statute of limitations for Rehabilitation Act claims in Maryland is

three years"); *Ross v. Bd. of Educ. of Prince George's Cty.*, 195 F. Supp. 2d 730, 735 n.2 (D.

Md. 2002); *Speciner v. NationsBank, N.A.*, 215 F. Supp. 2d 622, 634 (D. Md. 2002) (determining

that "the three year limitations period applicable to state law civil actions is the most appropriate

in the context of an ADA civil rights claim"); *Kohler v. Shenasky*, 914 F. Supp. 1206, 1211 (D.

Md. 1995). Defendants do not challenge the viability of Plaintiff's claims under a three-year

limitations period.  Accordingly, Taylor's claims survive dismissal at this juncture.

### iii.      Failure to State a Claim under the ADA or Rehabilitation Act

Defendants next argue that Taylor's claims as pled are insufficient as a matter of law. To prevail under an ADA Title II or Rehabilitation Act § 504 claim, "a plaintiff must show that she was excluded from participation in, or denied the benefits of, a program or service offered by a public entity, or subjected to discrimination by that entity." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005) (emphasis omitted). "Discrimination" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." *Id.* § 12112(b)(5)(A) (from Title I's definition); *see also Paulone v. City of Frederick*, 787 F. Supp. 2d 360, 372 (D. Md. 2011) (discussing the equivalence of "reasonable accommodations" and "reasonable modifications").[2]

Implementing regulations amplify what is meant by reasonable accommodations. Under 28 C.F.R. § 35.130(b)(7), a public entity must "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." With regard to communication-related disabilities, the regulations require public entities to "take appropriate steps to ensure that communications with applicants, participants, and members of the public with disabilities are as effective as communications with others," *id.* § 35.160(a), and to "furnish appropriate auxiliary aids and services where necessary to afford an individual with a disability an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity conducted by a public entity." *Id.* § 35.160(b)(1). Whether the Defendants reasonably accommodated Taylor's disability is a fact-intensive question. *Pandazides v. Virginia Bd. of*

---

[2] Claims under the ADA's Title II and the Rehabilitation Act can be combined for analytical purposes because the analysis is "substantially the same." *Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1265 n.9 (4th Cir.1995).

*Educ.*, 13 F.3d 823, 833 (4th Cir. 1994) (citing cases); *Carrozza v. Howard Cty., Md.*, 847 F. Supp. 365, 368 (D. Md. 1994), *aff'd*, 45 F.3d 425 (4th Cir. 1995).

Here, Taylor's amended complaint sufficiently alleges violations of the Rehabilitation Act and ADA to survive dismissal. Taylor, who is deaf and has difficulty otherwise communicating without a sign language interpreter, alleges that he was interrogated for five to six hours by the Montgomery County police without the accommodation of a sign-language interpreter. ECF No. 15 at 4–5.  During the interrogation, his left harm was handcuffed to the table even though Taylor informed the officers that he was left-handed and would need his hand free to communicate. *Id.* He also twice requested an ASL interpreter but received none. Instead, he was provided with an employee who was familiar with sign language but could not sign fluently. *Id.* at 5.

After the interrogation, Taylor's initial appearance on his criminal charge was conducted at the Central Processing Unit of the Montgomery County Department of Corrections, again without an interpreter. Taylor was also continually deprived meaningful sign-language assistance throughout his forty-two day detention at the Montgomery County Detention Center.  *Id.* at 6. Taylor further alleges that although he was given a teletypewriter ("TTY") to communicate with his family members who are also hearing impaired, he contends that TTY is obsolete and none was available to his family so he had no way to communicate with anyone outside the detention facility. Thus, the complaint sufficiently alleges that the Defendants' failed to furnish Taylor with reasonable accommodations for his hearing impairment which prevented Taylor from adequately participating in his criminal process.

Defendants maintain that Taylor's ADA claims should nonetheless be dismissed because Taylor has failed to establish that he was injured, and a mere violation of the ADA does not

alone establish injury. Defendants also contend that the Rehabilitation Act claims should be dismissed because a plaintiff must demonstrate that the defendants acted with bad faith or gross misjudgment in order to be found liable.

This Court, however, has adopted the position that "the discrimination prohibited by the ADA is an injury in itself, and have rejected a requirement that a plaintiff show a further injury apart from the discrimination as a predicate to liability (as opposed to eligibility for compensatory damages)." *Paulone v. City of Frederick*, 787 F. Supp. 2d 360, 390 (D. Md. 2011). While Plaintiff must prove intentional discrimination or deliberate indifference to recover compensatory damages, such a showing is not necessary to establish liability in the first instance. *See Proctor v. Prince George's Hosp. Ctr.*, 32 F. Supp. 2d 820, 828 (D. Md. 1998) (discussing the intent requirement as it relates to compensatory damages); *Adams v. Montgomery Coll. (Rockville)*, 834 F. Supp. 2d 386, 393–94 (D. Md. 2011) ("While the Fourth Circuit has not specifically addressed whether compensatory damages are available for failure to provide reasonable accommodation under the disability statutes, "the majority of circuits that have resolved the question have held that damages may be awarded if a public entity 'intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons.'" (quoting *Paulone*, 787 F. Supp. 2d at 373)). Defendants' motion with respect to Taylor's ADA and Rehabilitation Act claims against Montgomery County is therefore denied.

To the extent Taylor seeks punitive damages, however, Defendants' motion is granted. It is well-settled that "[p]unitive damages 'may not be awarded in suits brought under [Title II] of the ADA and § 504 of the Rehabilitation Act.'" *Paulone v. City of Frederick*, 787 F. Supp. 2d 360, 373 (D. Md. 2011) (quoting *Barnes v. Gorman*, 536 U.S. 181, 189 (2002)). Plaintiff cannot seek punitive damages here.

### C.      Negligence (Count Four)

In Count Four, Taylor alleges common law negligence based Defendants' alleged breach of their "duty to train, instruct and discipline their employees and agents to conform their policies and acts to the requirements of the laws and the Constitution of the United States." Amended Complaint, ECF No. 15 at 13. Defendants argue that Taylor cannot maintain his negligence claim because he failed to give timely notice to the Defendants pursuant to the Local Government Tort Claims Act ("LGTCA"). Defendants are correct, and Plaintiff's negligence claim will be dismissed.

Section 5–304(a) of the LGTCA provides that "an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 180 days after the injury." Md. Code Ann., Cts. & Jud. Proc. § 5-304. The notice is a condition precedent to the right to maintain an action for damages. *Bibum v. Prince George's Cty.*, 85 F. Supp. 2d 557, 563–64 (D. Md. 2000) (citing *Grubbs v. Prince George's County*, 267 Md. 318, 320–21 (1972)). Compliance with the notice provision should be alleged in the complaint as a substantive element of the cause of action. *Id.* at 564 (citing *Madore v. Baltimore County*, 34 Md. App. 340, 342 (1976)). Taylor neither alleges compliance with the notice provision in his amended complaint, nor does he address the issue at all in responding to Defendants' motion to dismiss. The negligence claim is therefore dismissed for failure to demonstrate compliance with the LGTCA's notice provisions.

### D.      Constitutional Violations (Count Three)

Taylor also alleges violations of his rights under the Fifth, Eighth, Ninth, and Fourteenth Amendments. While the amended complaint does not expressly state that he brings these claims pursuant to 42 U.S.C. § 1983, it is indeed the statutory vehicle by which liability is imposed on

anyone who, acting under color of state law, subjects any citizen or other person "to the deprivation of any rights, privileges, or immunities secured by the Constitution." *Id.* Taylor appears to claim these constitutional violations against all six Defendants, but not does allege that any of the individually named Defendants were personally involved with Taylor during his arrest or detention. His response in opposition to Defendants' motion to dismiss suggests that rather than bring claims of individual liability, he is attempting to hold the municipality responsible for Plaintiff's arrest and detention pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978).

In *Monell*, the Supreme Court determined that local governmental bodies may be held liable under § 1983 based on the unconstitutional actions of its individual agents or employees only where they acted pursuant to an official policy or custom of the local government that resulted in a violation of the plaintiff's rights. 436 U.S. at 690–91; *see also Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004).  Accordingly, plaintiffs seeking to impose § 1983 liability on a municipality must "adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994). The policy or custom may be "an express policy, such as a written ordinance or regulation;" a decision by "a person with final policymaking authority;" "an omission, such as a failure to properly train officers, that manifest[s] deliberate indifference to the rights of citizens;" or "a practice that is so persistent and widespread as to constitute a custom or usage with the force of law." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (internal quotation marks omitted).

To state a *Monell* claim, a plaintiff must allege that "'(1) the municipality [had] actual or constructive knowledge of the custom and usage by its responsible policymakers, and (2) there

14

[was] a failure by those policymakers, as a matter of specific intent or deliberate indifference, to correct or terminate the improper custom and usage.'" *Rockwell v. Mayor & City Council of Baltimore*, No. RDB-13-3049, 2014 WL 949859, at *11 (D. Md. Mar. 11, 2014) (quoting *Randall*, 302 F.3d at 210 (internal quotation marks omitted)). The plaintiff also must allege that there was "a 'direct causal link' between the policy or custom and the deprivation of rights." *Id.* (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 386–86 (1989)). Notably, "'there must be numerous particular instances of unconstitutional conduct in order to establish a custom or practice,'" because "[a] municipality is not liable for mere 'isolated incidents of unconstitutional conduct by subordinate employees.'" *Smith v. Ray*, 409 F. App'x 641, 651 (4th Cir. 2011) (quoting *Lytle v. Doyle*, 326 F.3d 463, 473 (4th Cir. 2003)).

*Monell* claims based on a failure to adequately train require a showing of "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *City of Canton, Ohio*, 489 U.S. at 388). Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Connick v. Thompson*, 563 U.S. 51, 61–62 (2011) (internal citations omitted). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.*

As pleaded, Taylor's allegations fall woefully short of averring *Monell* liability. The amended complaint merely alleges that the Defendants had employed policies and practices which "are shocking to the conscience" and had generally failed to properly train their employees. ECF No. 15 at 13. Taylor provides no further detail about how these purported policies or practices led to systemic constitutional violations. Specifics are limited only to Taylor's single episode of alleged discrimination, which is a far cry from the "numerous

particular instances of unconstitutional conduct" necessary "to establish a custom or

practice." *Lytle*, 326 F.3d at 473; *see Smith*, 409 F. App'x at 651. And while Taylor alleges that

the failure to train officers as to the needs of deaf detainees amounted "deliberate indifference,"

he must do more than simply say it is so. Count III, therefore, must be dismissed.

## E.      Taylor's Claims for Declaratory and Injunctive Relief

Taylor requests a declaration that Defendants violated his rights under the ADA and

Rehabilitation Act and the United States Constitution. He also asks the Court to enjoin

Defendants from continuing to engage in the conduct giving rise to Taylor's claims. Amended

Complaint, ECF No. 15 at 13–15. As Defendants argue, however, Taylor does not maintain

standing to seek injunctive and declaratory relief under the case-or-controversy clause of Article

III of the Constitution.  Standing is conferred where the plaintiff  "'alleges personal injury fairly

traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the

requested relief.'" *Levinson-Roth v. Parries*, 872 F. Supp. 1439, 1445 (D. Md. 1995) (quoting

*Allen v. Wright*, 468 U.S. 737, 751 (1984)). Specifically, to obtain either declaratory or

injunctive relief, Taylor must show that he personally is in danger of being injured by the

Defendants' conduct and that the danger is both "real" and "imminent" and neither "conjectural"

nor "hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983); *see also Levinson-*

*Roth*, 872 F. Supp. at 14`46 ("The standing requirements for declaratory relief therefore mirror

the requirements for injunctive relief.").  Critically, "[p]ast exposure to illegal conduct does not

in itself show a present case or controversy" conferring standing for claimed injunctive relief. *Id.*

Here, Taylor has failed to plead facts sufficient to demonstrate that the risk of Defendants

repeated alleged violations is "real and immediate" warranting injunctive relief.

Prognostications regarding how Plaintiff "may in the future be arrested or detained in

Montgomery County, Maryland" are far too speculative. Amended Complaint, ECF No. 15 at 11.

Indeed, three years have passed since Taylor was released from detention without any similar

instances of mistreatment befalling him. *Cf. Lyons*, 461 U.S. at 108 (noting that five months had

elapsed between the incident and the filing of the complaint, "yet there was no allegation of

further unfortunate encounters between Lyons and the police."). Defendants' motion is therefore

granted with respect to Taylor's requests for declaratory and injunctive relief.

## IV.    CONCLUSION

Defendants' motion to dismiss is granted in part and denied in part. It is denied with

respect to Taylor's ADA and Rehabilitation Act claims against Montgomery County, Maryland.

It is granted in all other respects. Defendants' original motion to dismiss, ECF No. 6, is denied as

moot as are Taylor's two subsequent motions for leave to file an amended complaint. ECF Nos.

18 and 19. A separate order will follow.


3/15/2017                                                    /S/
Date                                     Paula Xinis
                                         United States District Judge